**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

EDWARD F. BOYD, JR.,

                     Plaintiff,

vs.                                  Case No.  3:10-cv-105-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                     Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

     Edward F. Boyd, Jr. ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's final decision denying his claim for disability insurance benefits.  His alleged

inability to work is based on the following impairments:  "[P]roblems with [Plaintiff's] heart,

high blood pressure, diabetes, arthritis, back pain and headaches."   Transcript of

Administrative Proceedings (Doc. No. 7; "Tr.") at 75.  On May 12, 2008, Plaintiff completed

an application for disability insurance benefits, alleging an onset date of disability of May 31,

2007.  Tr. at 130-32.  On January 28, 2009, an Administrative Law Judge ("ALJ") held a

hearing at which Plaintiff and a vocational expert ("VE") testified.  Tr. at 19-73.  On March

30, 2009, the ALJ issued a Decision finding Plaintiff not disabled through the date of the

Decision.  Tr. at 12-18.  On January 11, 2010, the Appeals Council denied Plaintiff's request

for review.  Tr. at 1-3.  On February 5, 2010, Plaintiff commenced this action under 42

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see
Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 6), and the Order of
Reference was entered on April 26, 2010 (Doc. No. 8).

U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.   Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff, who was fifty-three years old at the time of his hearing before the ALJ, Tr. at 23, advances three issues for resolution by the Court: (1) whether the ALJ erred "in his determination that [Plaintiff]'s testimony as to disabling symptoms and functional limitations were not credible to the extent that they were inconsistent with his ability to perform a reduced range of light work"; (2) whether "the Appeals Council err[ed] by refusing to review the [ALJ]'s [D]ecision" despite new evidence submitted by Plaintiff; and (3) whether the ALJ erred "by failing to state the weight he provided to a letter in the file from a Vocational Rehabilitation counsel[or] which supports [Plaintiff]'s claim for benefits[.]"  Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 11; "Pl.'s Mem."), filed June 24, 2010, at 1, 10, 20, 23. (emphasis omitted).   After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's Decision is supported by substantial evidence of record.   The ALJ provided explicate and adequate reasons for finding Plaintiff "not credible."   In addition, the Appeals Council did not err in refusing to review the ALJ's Decision despite the submission of new evidence.   Moreover, there was no error on the part of the ALJ in not explicitly stating the weight given to the letter from Plaintiff's vocational rehabilitation counselor.   Accordingly, the Decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

as appropriate whether the individual: 1) is currently employed or engaging in substantial gainful activity; 2) has a severe impairment; 3) has an impairment that meets or medically equals one listed in the Regulations; 4) can perform past relevant work; and 5) retains the ability to perform any work in the national economy.  See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The ALJ performed the required five-step sequential inquiry.  Tr. at 14-18.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since May 31, 2007, the alleged onset date . . . ."  Tr. at 14.  At step two, the ALJ found Plaintiff suffers from the following severe impairments: "degenerative arthritis of the spine, ankles, and knees; history of eczema; ischemic cardiomyopathy; hypertension; diabetes mellitus; and obesity . . . ."  Tr. at 14.  At step three, the ALJ stated Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . ."  Tr. at 16.

The ALJ determined Plaintiff has the residual functional capacity ("RFC") "to perform light work[,] . . . except he can never climb ladders, ropes, or scaffolds.  He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl."  Tr. at 16.  At step four, the ALJ found that Plaintiff is able to perform his "past relevant work as a telephone solicitor," because "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's RFC.]"  Tr. at 18.  The ALJ noted that Plaintiff's past relevant work "as a telephone solicitor was sedentary, semi-skilled work . . . ."  Tr. at 18.  At step five, the ALJ found Plaintiff can perform the following additional jobs, which exist in significant numbers in the national economy: "fast food worker" and "cashier[.]"  Tr. at 18.  The ALJ

concluded that Plaintiff was not under a disability[2] from May 31, 2007 through the date of the Decision.  Tr. at 18.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

---

[2]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

Plaintiff raises three issues: (1) whether the ALJ erred "in his determination that [Plaintiff]'s testimony as to disabling symptoms and functional limitations were not credible to the extent that they were inconsistent with his ability to perform a reduced range of light work"; (2) whether "the Appeals Council err[ed] by refusing to review the [ALJ]'s [D]ecision" despite new evidence submitted by Plaintiff; and (3) whether the ALJ erred "by failing to state the weight he provided to a letter in the file from a Vocational Rehabilitation counsel[or] which supports [Plaintiff]'s claim for benefits[.]"  Pl.'s Mem. at 1, 10, 20, 23 (emphasis omitted).

In the Decision, the ALJ discussed Plaintiff's testimony as follows:

> At the hearing, . . . [Plaintiff] testified that he last worked in May of 2007 doing construction clean-up; cleaned out left over [materials] for new home construction.  He stated that he put stuff in the truck, took it to the dumpster, and pressure washed them.  He stated that he lifted at least [twenty to twenty-five] pounds[³] and broke up concrete with a sledge hammer.  [Plaintiff] testified that he was the owner and sole employee of this company and did all the work himself.  He stated that the earnings in 2008 were from unemployment.  [Plaintiff] testified that prior to construction, he drove a bread truck, which required him to load and unload bread.  He stated that he was in the service from 1974-1[9]76 and from 1986-1993. . . . [Plaintiff] testified that he stopped working in May of 2007 because of his back pain and all the medications he was taking.  He stated that standing in one place for [ten] minutes caused back pain.  He stated that he was in constant pain when he stood up.  [Plaintiff] testified that he could not stand or sit for long periods of time and that he had to lie in bed.  He stated that his joints were wore out and hurt all the time.  He stated he had surgery on his ankle.  He stated that he could sit at a computer about [five] minutes. . . . [Plaintiff] testified that, over the past year, he spent [ninety percent] of the time either reclining or sitting down.  He stated that he lived alone and that he did not leave the house.  [Plaintiff] testified that he had had a handicapped sticker for [three to four] years, ever since his heart problem.[⁴]  He stated that prior to May of 2007, he was working beyond his capacity, but he had [three] children he had to take care of. . . . [Plaintiff] testified that he cooked

---

³       At the hearing, the ALJ stated that based on Plaintiff's description of his "clean-up" job, it appeared Plaintiff lifted more weight during that job than he reported.  See Tr. at 35.

⁴       The ALJ specifically asked Plaintiff the following at the hearing: "So you don't feel like it was inconsistent that you had a disability parking sticker but you were working . . . .?"  Tr. at 45.  Plaintiff responded, "Right, well actually that's why I was working for myself because I couldn't get a job with nobody else."  Tr. at 45.

using the microwave.  He stated that his pain was a constant 8/10.  He stated that he was on strong pain medications. . . . [Plaintiff] testified that the medications helped, but the side effects were bad.  He stated that he was afraid the medication would stop his heart.  [Plaintiff] testified that he was placed on Methadone.  He stated that he could not bend over to touch his toes.  He stated that he did his laundry a little at a time. . . . [Plaintiff] testified that [his] children came over and checked on him.  He stated that he still drives and that the farthest he drove was to Gainesville for his injections; [six] times a year.  He stated that he went to the library twice a month.  He stated that he watched television and read. . . . [Plaintiff] testified that he only slept [four to six] hours a night due to pain, and that he took naps during the day.  He stated that he had trouble carrying a gallon of water.  He stated that he could not climb stairs or squat.  [Plaintiff] testified that he could walk [thirty to forty] feet.  He stated that he leaned on a cart to shop.

Tr. at 16-17.

### A.    Plaintiff's Credibility

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [ALJ's] [RFC] assessment." Tr. at 17.  The ALJ offered seven reasons[5] in support of finding Plaintiff "not credible":  (1) Plaintiff "has alleged performing few, if any household chores . . . [y]et, it is noted that he lives alone and has not reported any particular help in maintaining his residence"; (2) "the record reflects unemployment compensation earnings in the 1st and 2nd quarters of 2008[,]" which show Plaintiff represented he "was willing and able to work through at least June of 2008"; (3) "[m]edical records show that . . . [Plaintiff] has received treatment for the allegedly disabling impairments; however, that treatment has been essentially routine in nature" and "generally successful in controlling . . . [Plaintiff]'s symptoms"; (4) "the description of symptoms and limitations . . . has generally bee[n] inconsistent and unpersuasive"; (5) Plaintiff's "generally unpersuasive appearance and

---

[5]    The ALJ's reasons in the Decision are not numbered, see Tr. at 17; however, for ease of discussion, the ALJ's reasons are numbered in this Order.

demeanor while testifying at the hearing"; (6) "the record does not contain any opinions from treating or examining physicians indicating that . . . [Plaintiff] is disabled or that he has limitations greater than those determined in this [D]ecision"; and (7) "the [RFC] conclusions reached by the physicians employed by the State Disability Determination Services also support a finding of 'not disabled.'"  Tr. at 17.

Plaintiff argues the ALJ's reasons, "either singly or in combination, are (1) not supported by substantial evidence and/or (2) are not 'adequate' enough to find [Plaintiff]'s testimony of disabling impairments and limitations not credible."  Pl.'s Mem. at 13. Defendant contends in opposition that "the ALJ properly assessed Plaintiff's credibility and gave specific reasons for his credibility finding."  Memorandum in Support of the Commissioner's Decision (Doc. No. 12; "Def.'s Mem."), filed August 24, 2010, at 4.

To establish a disability based on testimony of pain or other subjective symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged subjective symptoms; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed subjective symptoms.  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that "the standard also applies to complaints of subjective symptoms other than pain")).  "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability."  Holt, 921 F.2d at 1223.

"[C]redibility determinations are the province of the ALJ."  Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).  The ALJ "must articulate explicit and adequate reasons"

for finding a claimant "not credible." Wilson, 284 F.3d at 1225. "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications, and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). After considering the claimant's subjective complaints, "the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)). The United States Court of Appeals for the Eleventh Circuit has found that when the ALJ has provided at least three explicit and adequate reasons for finding the claimant "not credible," the ALJ has made a proper credibility determination. See Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989).

Here, Plaintiff satisfies the first part of the test applied in Wilson because the ALJ found evidence of an underlying medical condition. See Tr. at 14-16; Wilson, 284 F.3d at 1225. Specifically, the ALJ found evidence of "degenerative arthritis of the spine, ankles, and knees; history of eczema; ischemic cardiomyopathy; hypertension; diabetes mellitus; and obesity . . . ." Tr. at 14. As to the second part of the Wilson test, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, . . . [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with . . . [Plaintiff's RFC] assessment." Tr. at 17. As discussed below, a review of the record reveals the ALJ articulated explicit and adequate reasons for finding Plaintiff "not credible"

after considering the factors discussed in <u>Davis</u> and set forth in the Regulations.  <u>See</u> <u>Davis</u>, 287 F. App'x at 760; 20 C.F.R. § 404.1529(c)(3)(i)-(vii).  Moreover, the ALJ's reasons for finding Plaintiff "not credible" are supported by substantial evidence in the record.  <u>See</u> <u>Marbury</u>, 957 F.2d at 839.

### 1.    Activities of Daily Living (Reason No. 1)

The first reason articulated by the ALJ for finding Plaintiff "not credible" is that Plaintiff lives alone and claims he performs few household chores but does not report "any particular help maintaining his residence."  Tr. at 17.  Plaintiff asserts that "his home is 'run down' and the ALJ failed to offer any evidence to contradict this statement."  Pl.'s Mem. at 13.  Defendant contends Plaintiff's activities of daily living "belie[] the severity of his alleged disabling symptoms."  Def.'s Mem. at 9.

The ALJ properly considered Plaintiff's activities of daily living in evaluating Plaintiff's credibility.  <u>See</u> <u>Davis</u>, 287 F. App'x at 760; 20 C.F.R. § 404.1529(c)(3)(i).  In the Decision, the ALJ discussed Plaintiff's testimony at the hearing with regard to Plaintiff's activities of daily living:

> [Plaintiff] stated that he lived alone and that he did not leave the house[;] . . . that he cooked using the microwave[;] . . . that he did his laundry a little at a time[;] . . . that his children came over and checked on him[;] . . . that he still drives and that the farthest he drove was to Gainesville for his injections[;] . . . that he went to the library twice a month[;] . . . that he had trouble carrying a gallon of water[;] . . . [and] that he leaned on a cart to shop.

Tr. at 17.  Although the ALJ did not specifically address Plaintiff's statement that his home is "run down," the ALJ did recognize that Plaintiff claims he is limited to some degree in his activities of daily living and that his children check on him from time to time.  The record supports the ALJ's conclusion that Plaintiff has not reported any particular help maintaining his residence.  Aside from testifying that the U.S. Department of Veterans Affairs ("VA") is

"supposed to look into sending somebody" to assist Plaintiff at home, Plaintiff merely indicated at the hearing that his children sometimes go to the store for him, see Tr. at 46, that his children "come by and check on [him]," Tr. at 50, that one of his children goes with him to his appointments in Gainesville, Tr. at 51, and indicated on a form generally that his "son and daughter have to care for [him,]" Tr. at 186.   Further support for the ALJ's conclusion regarding Plaintiff's activities of daily living can be found in Plaintiff's VA medical records and treatment notes from Dodd Chiropractic & Five Points Medical Clinic.   See Tr. at 234 (the VA stating on February 5, 2008 that Plaintiff is "independent in the activities of daily living"); 423 (the VA stating on September 10, 2008 that Plaintiff does not have problems caring for himself at home); 461 (Dodd Chiropractic stating on November 26, 2008 that Plaintiff "responds well to massage w[ith] improved [activities of daily living]"); 464 (Dodd Chiropractic stating same on October 28, 2008).

### 2.    Unemployment Compensation (Reason No. 2)

The ALJ's second reason is Plaintiff represented that he was "willing and able to work," Tr. at 17, in his application for unemployment compensation, which contradicts Plaintiff's claim that he is disabled.   See Tr. at 17.   Plaintiff asserts the ALJ did not discuss Plaintiff's testimony with regard to this reason.   Pl.'s Mem. at 13.   Plaintiff claims it is clear from his testimony that he did not understand the "'potential' inconsistency between the receipt of unemployment benefits and disability application."   Id. at 14.   Plaintiff states once he realized the implications of receiving unemployment compensation, he "voluntarily stopped receiving unemployment benefits . . . ."   Id.   Plaintiff also argues it was improper for the ALJ to consider Plaintiff's receipt of unemployment compensation in assessing Plaintiff's credibility.   Id. at 15.

Defendant asserts the ALJ reasoned that Plaintiff's receipt of unemployment compensation demonstrates Plaintiff represented he "'was willing and able to work through at least June 2008.'"  Def.'s Mem. at 11.  Defendant contends the ALJ did not construe Plaintiff's receipt of unemployment compensation as an admission that Plaintiff is not disabled.  See id. at 12.  According to Defendant, "it appears the ALJ was only pointing out the inconsistency between Plaintiff's report that he could work in order to collect unemployment benefits while at the same time claiming to be as limited as Plaintiff alleged."  Id.

Plaintiff relies on O'Neal v. Astrue, No. 3:08-cv-63-J-MCR, 2009 WL 702865, at *11 (M.D. Fla. Mar. 17, 2009) (unpublished).  Pl.'s Mem. at 16.  In O'Neal, one of the reasons given by the ALJ for finding the plaintiff "not credible" was the plaintiff's receipt of "unemployment compensation subsequent to her alleged date of disability."  O'Neal, 2009 WL 702865, at *11.  It was observed by the Court that "one does not have to be unable to work entirely in order to receive unemployment compensation," and it was determined by the Court that "receipt of unemployment benefits is not equivalent to [the plaintiff] admitting she is not disabled."  Id.

Defendant asserts that Willimon v. Astrue, No. 3:08-cv-1235-J-JRK, 2010 WL 1252152, at *1 (M.D. Fla. Mar. 26, 2010) (unpublished), a case decided by the undersigned, provides more appropriate guidance on this issue.  Def.'s Mem. at 11-12.  In Willimon, one of the reasons given by the ALJ for finding the plaintiff "not credible" was the fact that the plaintiff "was receiving unemployment income during the same time period he was alleging disability, and 'hence reported to the State of Florida that he was capable and actively looking for work while simultaneously reporting that he was physically and mentally unable

to perform any work.'" <u>Willimon</u>, 2010 WL 1252152, at *4.  I determined that the ALJ was not "asserting that the phrase 'able to work' under the Florida unemployment compensation statute means the same thing as 'not disabled' under the Social Security Act."  <u>Id.</u>  Rather, "[w]hen it was necessary to report that he was able to work for the purpose of obtaining unemployment benefits, [the plaintiff] so reported; now that [the plaintiff] is seeking disability benefits, he is reporting that he is unable to work.  These positions are inconsistent."  <u>Id.</u>

Here, the ALJ properly considered Plaintiff's receipt of unemployment compensation in making a credibility determination.  <u>See</u> 20 C.F.R. § 404.1529(c)(3)(vii) (providing the ALJ may consider "[o]ther factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms").  In the Decision, the ALJ found that although Plaintiff's receipt of unemployment compensation does not qualify as substantial gainful activity, it does "show that . . . [Plaintiff] was willing and able to work . . . ." Tr. at 17.  Unlike the ALJ in <u>O'Neal</u>, it does not appear the ALJ construed Plaintiff's receipt of unemployment compensation as an admission that he is "not disabled."  <u>See</u> <u>O'Neal</u>, 2009 WL 702865, at *11.  Rather, like the ALJ in <u>Willimon</u>, when viewed in context, it is apparent the ALJ was supporting his credibility determination by referencing the inconsistent positions of Plaintiff applying for unemployment compensation and Plaintiff's claim for disability insurance benefits.  <u>See</u> <u>Willimon</u>, 2010 WL 1252152, at *4.  That is, the ALJ's reference to unemployment compensation is set forth in the portion of the Decision discussing Plaintiff's credibility.

That the ALJ was relying on the inconsistent positions of Plaintiff as a factor in determining Plaintiff's credibility is supported by the ALJ's comments at the hearing regarding Plaintiff's application for unemployment compensation:

ALJ:   But just seems, it's an issue to me partly of credibility.  If a person is saying one thing to somebody and saying something else to somebody else it's a credibility issue.

. . .

ALJ:   It may be true that you're totally disabled and you cannot do any work. Just as people say different things to different people you wonder what's the real truth is.

Tr. at 38.  These comments are clearly directed to Plaintiff's credibility, not the ultimate issue of whether Plaintiff is disabled.

### 3.    Plaintiff's Course of Treatment (Reason No. 3)

The third reason offered by the ALJ is that Plaintiff's course of treatment appeared to be "routine in nature" and "generally successful in controlling . . . [Plaintiff]'s symptoms." Tr. at 17.  The ALJ stated Plaintiff "has been prescribed and takes appropriate medications, undergoes injections through the VA Pain Clinic, and receives acupuncture with electric stimulator and massage therapy from Dodd Chiropractic, which are generally successful in controlling . . . [Plaintiff]'s symptoms."  Tr. at 17.

Plaintiff contends his course of treatment, including "the administration of Morphine pain medication, numerous injections, bilateral lumbar median branch blocks and lumbar facet radiofrequency nerve destruction or rhizotomy is not ordinary, regular or 'routine' treatment."  Pl.'s Mem. at 17.  Plaintiff argues the ALJ's conclusion that Plaintiff's course of treatment has been "'generally successful'" in controlling his symptoms is contradicted by Plaintiff's testimony and the evidence of record.  Id.  Defendant claims "[t]he ALJ properly considered that Plaintiff's prescribed treatment was conservative in nature in rejecting Plaintiff's subjective complaints."  Def.'s Mem. at 7.

The ALJ properly considered Plaintiff's course of treatment in evaluating Plaintiff's credibility. See Davis, 287 F. App'x at 760; 20 C.F.R. § 404.1529(c)(3)(v).  Morever, the ALJ's evaluation of the routine nature of Plaintiff's course of treatment as well as the general success of Plaintiff's treatment in controlling his symptoms was appropriate. See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (upholding the ALJ's decision to discredit the plaintiff where the ALJ found the plaintiff's "course of treatment . . . [was] entirely conservative in nature"); Berry v. Astrue, No. 5:09-cv-328-Oc-GRJ, 2010 WL 3701392, at *7 (M.D. Fla. Sept. 15, 2010) (unpublished) (finding the ALJ's consideration of the plaintiff's routine course treatment and the general success in controlling her allegedly disabling symptoms proper in making a credibility determination).  A review of the record reveals Plaintiff routinely took pain medication, underwent injections, and received acupuncture and massage therapy for his pain symptoms. See Tr. at 199, 202-04, 238-41, 243, 247-51, 254-56, 259-60, 263-68, 270, 293-96, 323, 325, 328, 331, 334-36, 338, 341-46, 363-64, 367, 407, 409, 414, 420, 436, 439-44, 450-500.  Plaintiff's injections have been successful in controlling his pain symptoms. See Tr. at 341 (the VA stating that "[t]he injections did provide relief for him"); 365 (Robert G. Valentine, Jr., M.D. ("Dr. Valentine") indicating Plaintiff had nerve blocks administered two to three times with "good relief"); 367 (Dr. Valentine stating Plaintiff "reports he has had positive response to facet joint blocks").  In addition, treatment notes from Dodd Chiropractic indicate that acupuncture and massage therapy decreased Plaintiff's pain symptoms. See Tr. at 450 (stating Plaintiff has had a "good response" to treatment with decreased pain); 454 (stating Plaintiff responds well to treatment with decreased pain); 455 (reporting Plaintiff's lower back "felt better" following his acupuncture); 456 (stating Plaintiff responds well to treatment with decreased pain); 457

(stating same); 458 (reporting Plaintiff's lower back "felt better" following his acupuncture); 460 (stating Plaintiff responds well to treatment with decreased pain); 461 (stating same); 462 (stating Plaintiff "had been feeling good until today - (fishing yesterday)"); 463 (quoting Plaintiff stating lower back pain "isn't too bad"); 465 (decreased pain); 469 (decreased pain); 470 (stating Plaintiff's "pain level has decreased since beginning acupuncture treatment); 473 (decreased pain); 475 (decreased pain); 482 (stating Plaintiff "should keep seeing improvements in his pain levels [and] quality of life with continued [acupuncture] treatment"); 496 (decreased pain); 497 (decreased pain); 498 (decreased pain); 500 (decreased pain). Further, the medical records do not reflect that Plaintiff ever presented to the emergency room for treatment.

Although some of Plaintiff's treatment measures may not have been regular or routine, see Pl.'s Mem. at 17, overall, Plaintiff's course of treatment was routine and generally successful in controlling Plaintiff's symptoms. See Jones v. Astrue, No. 3:09-cv-431-J-25TEM, 2010 WL 3603933, at *9 (M.D. Fla. Sept. 9, 2010) (unpublished) (Report and Recommendation finding regular use of prescription medication to be routine), later adopted by Order (Doc. No. 17 in Case No. 3:09-cv-431-J-25TEM), entered September 29, 2010; McKenzie v. Astrue, No. 5:09-cv-228-Oc-GRJ, 2010 WL 3702465, at *13 (M.D. Fla. Sept. 16, 2010) (unpublished) (finding the plaintiff's receipt of nerve block injections "routine in nature"); Walker v. Bowen, 834 F.2d 635, 644 (7th Cir. 1987) (finding the failure to seek medical treatment other than routine physical therapy inconsistent with the plaintiff's testimony that he suffered disabling pain); Villarreal v. Sec'y of Health & Human Servs., 818 F.2d 461, 463, 464 (6th Cir. 1987) (finding massage therapy and use of medications to be conservative treatment measures); Lederle v. Astrue, No. 1:09-cv-1736-JLT, 2011 WL

839346, at *9 (E.D. Cal. Feb. 17, 2011) (unpublished) (finding the plaintiff's receipt of physical therapy, acupuncture, and chiropractic care to be conservative treatment).

### 4.    Plaintiff's Description of Symptoms and Limitations (Reason No. 4)

The fourth reason articulated by the ALJ is that "the description of symptoms and limitations, which . . . [Plaintiff] has provided throughout the record[,] has generally bee[n] inconsistent and unpersuasive." Tr. at 17.  Plaintiff contends "that such a general 'reason' is not adequate to find him not credible."  Pl.'s Mem. at 18.  Defendant asserts Plaintiff's report of pain on a scale of ten varies throughout the record and thus supports the ALJ's determination that Plaintiff's description of his limitations is "inconsistent and unpersuasive." Def.'s Mem. at 10.  Defendant also asserts Plaintiff's activities of daily living contradict his description of symptoms.  See id.

The ALJ properly considered Plaintiff's description of his symptoms and limitations in making a credibility determination.  See Davis, 287 F. App'x at 760; Sampson v. Astrue, No. 3:09-cv-455-J-TEM, 2010 WL 3292788, at *6-*7 (M.D. Fla. Aug. 19, 2010) (unpublished) (finding the ALJ's conclusion that the plaintiff's "description of symptoms and limitations [were] inconsistent and unpersuasive throughout the record" was a "clearly articulated" reason); 20 C.F.R. § 404.1529(c)(3)(vii).  At the hearing, Plaintiff testified that he suffers "constant pain" in his back, his pain "spikes" when he is sitting or standing "for a long period of time," and his upper body and joints "hurt[] all the time."  Tr. at 40.  Plaintiff testified that his back pain is an eight on a scale of one to ten and indicated that the pain exists "pretty much" all of the time.  Tr. at 46.  The record contains medical documentation from Dodd Chiropractic regarding Plaintiff's treatment between December 4, 2007 and February 10, 2009.  Tr. at 450-500.  The most recent documentation is dated almost two weeks after the

January 28, 2009 hearing.  <u>See</u> Tr. at 450.  A review of the documentation from Dodd Chiropractic reveals Plaintiff consistently reported that his pain levels were lower than he reported at the hearing.[6]  <u>See</u> Tr. at 450 (pain was a six on a scale of one to ten); 453 (pain was a four on a scale of one to ten); 454 (pain was a four on a scale of one to ten); 455 (pain was a seven on a scale of one to ten); 456 (pain was a six on a scale of one to ten); 457 (pain was a four on a scale of one to ten); 459 (pain was a five on a scale of one to ten); 460 (pain was a five on a scale of one to ten); 463 (pain was a four on a scale of one to ten); 463 (pain was a five on a scale of one to ten); 464 (pain was a three on a scale of one to ten); 465 (pain was a seven on a scale of one to ten); 466 (pain was a five on a scale of one to ten); 469 (pain was a six on a scale of one to ten); 470 (pain was a five on a scale of one to ten); 472 (pain was a five on a scale of one to ten); 472 (pain was a six on a scale of one to ten); 473 (pain was a seven on a scale of one to ten); 474 (pain was a five on a scale of one to ten); 476 (pain was a five on a scale of one to ten); 477 (pain was a seven on a scale of one to ten); 479 (pain was a three to four on a scale of one to ten); 480 (pain was a four on a scale of one to ten); 480 (pain was a six on a scale of one to ten); 482 (pain was a four on a scale of one to ten); 483 (pain was a four on a scale of one to ten); 489 (pain was a seven on a scale of one to ten); 490 (pain was a seven on a scale of one to ten); 493 (pain was a seven on a scale of one to ten); 495 (pain was a seven on a scale of one to ten).  In fact, it appears Plaintiff only reported to Dodd Chiropractic that his pain was an eight or nine on a scale of ten a total of seven times during the same time period.  <u>See</u> Tr. at 452, 455, 458, 462, 466, 467.

> **5.    Plaintiff's Appearance and Demeanor at the Hearing (Reason No. 5)**

---

[6]      The majority of the medical documents from Dodd Chiropractic contain treatment notes from multiple treatment dates on each document page.

Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing" is the fifth reason provided by the ALJ. Tr. at 17. Plaintiff contends that "such a reason, without further elaboration . . . cannot be found to be an adequate reason for a 'not credible' finding." Pl.'s Mem. at 18. Defendant asserts "an ALJ should consider his personal observations in evaluating Plaintiff's credibility and his articulation of his observations along with his other reasons for discounting Plaintiff's testimony provided substantial evidence supports his credibility finding." Def.'s Mem. at 11.

The ALJ properly considered Plaintiff's appearance and demeanor when testifying at the hearing in making a credibility determination. See Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(vii). As the ALJ seemingly recognized, it would have been improper for the ALJ to have relied solely upon his observations of Plaintiff at the hearing because the ALJ emphasized this was one reason among the six other reasons he articulated. See Tr. at 17; Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982) (classifying reliance solely on observations of the claimant at the hearing as "'sit and squirm'" jurisprudence). Such "sit and squirm jurisprudence" has been described as an approach in which "an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing." Id. "If the claimant falls short of the index, the claim is denied." Id.; see also Johns v. Bowen, 821 F.2d 551, 557 (11th Cir. 1987); McRoberts, 841 F.2d at 1081 (stating that "'sit and squirm' jurisprudence has no place in this circuit"). An ALJ, however, is not prohibited from considering a claimant's appearance and demeanor during the hearing, provided that the ALJ's observations do not displace the other evidence. See Macia, 829 F.2d at 1011. Here, it is evident the ALJ did not displace the other evidence with his observations and merely included his observations in his overall findings regarding Plaintiff's credibility.

### 6. Considering Objective Medical Evidence (Reason Nos. 6 and 7)

The sixth reason the ALJ articulated is "that the record does not contain any opinions from treating or examining physicians indicating . . . [Plaintiff] is disabled or that he has limitations greater than those determined" by the ALJ. Tr. at 17. Plaintiff contends "a physician's silence regarding a claimant's functional capacity does not translate into an opinion that a claimant can work." Pl.'s Mem. at 19.

The seventh reason is that the RFC assessments prepared by "the State Disability Determination Services" support a finding of "'not disabled.'" Tr. at 17. Plaintiff contends the RFC assessments completed by nonexamining physicians John E. Long, M.D. ("Dr. Long") on July 1, 2008 and Audrey Goodpasture, M.D. ("Dr. Goodpasture") on September 8, 2008 were prepared prior to the introduction of "approximately 180 pages of medical records . . . ." Pl.'s Mem. at 19.

"In determining the credibility of the individual's statements, the [ALJ] must consider the entire case record, including the objective medical evidence, . . . statements and other information provided by treating or examining physicians . . . about the symptoms and how they affect the individual, and any other relevant evidence in the case record." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *1 (S.S.A. Jul. 2, 1996). "An individual's statements about the intensity and persistence of pain or other symptoms . . . may not be disregarded solely because they are not substantiated by the objective medical evidence." Id. (emphasis added).

Here, the ALJ's consideration of the objective evidence in the record was proper. Neither of the above two reasons was the ALJ's sole reason for finding Plaintiff "not credible"; each was one reason among several reasons provided by the ALJ. As to Reason

No. 6, the ALJ noted there were no opinions from treating or examining physicians finding Plaintiff "disabled" or more severely limited than determined by the ALJ. Tr. at 17.  A review of the record reveals this is accurate.  In fact, several records from the VA support a finding that Plaintiff is able to work.  <u>See</u> Tr. at 219 (stating "Plaintiff's bilateral knee and bilateral ankle conditions should not preclude him from obtaining and maintaining a gainful employment"); 288-89 (stating Plaintiff's "service connected condition should not preclude him from obtaining and maintaining a light duty employment"); 292 (stating Plaintiff's "skin conditions should not prevent him from obtaining and maintaining a gainful employment").

Additionally, the following medical documentation objectively supports the ALJ's conclusions regarding Plaintiff's limitations.  Juan J. Roig, M.D., a radiologist, reported the following: "[f]ilms of the lumbosacral spine show[] spurring formation at L1, L2 and L5 vertebral bodies.  There is no recent fractures[,] dislocations or bony destructions.  Sacroiliac joints show[] minimal osteoarthritis, mostly on the right side.  Pedicles are intact." Tr. at 261.  Tom Paganucci, M.D. ("Dr. Paganucci") reviewed a MRI taken of Plaintiff and found "mild degenerative spondylosis of the lumbar spine.  Desiccation of the L5-S1 disk. No evidence of disk herniation or spinal stenosis." Tr. at 383 (capitalization omitted).  X-rays taken of Plaintiff on August 13, 2007 revealed "[n]ormal knees bilaterally." Tr. at 216.  Shio N. Agrawal, M.D. ("Dr. Agrawal") performed a muscloskeletal examination of Plaintiff on February 5, 2008 and found evidence of "chronic low back pain." Tr. at 235.  Dr. Agrawal, however, found Plaintiff had 5+ motor power in the upper and lower extremities. Tr. at 235. Dr. Valentine found Plaintiff had a limited range of motion in his lumbar spine and noted the presence of "paraspinal tenderness," "spinous process tenderness," and "muscular tenderness." Tr. at 367.  With regard to Plaintiff's extremities, Dr. Valentine found "no

clubbing[,] no extremity cyanosis[,] [and] no pretibial edema." Tr. at 367. Dr. Valentine indicated Plaintiff's hip, knee, ankle motor functions were "normal bilaterally," and Plaintiff was able to "walk on toes and heels." Tr. at 367.

Regarding Reason No. 7, the ALJ stated the RFC assessments of two nonexamining physicians supported a finding of "'not disabled.'" Tr. at 17. The ALJ recognized that nonexamining physicians do not deserve as much weight as those of examining or treating physicians, but "do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions." Tr. at 17-18. Both Dr. Long and Dr. Goodpasture found Plaintiff can occasionally lift and/or carry twenty pounds; can frequently lift and/or carry ten pounds; can stand and/or walk for about six hours in an eight-hour workday; can sit about six hours in an eight-hour workday; and is unlimited in push and/or pull functioning. Tr. at 307, 315. These findings are supported by substantial evidence. See Tr. at 193 (the VA stating Plaintiff "is independent in the activities of daily living"); 213 (the VA stating that "[t]here is no use of assistive devices for bilateral ankles or bilateral knees" and noting Plaintiff "was found to have normal bilateral knee exam"); 214 (the VA stating "[n]o functional limitation noted for standing or walking"); 219 (the VA stating "Plaintiff's bilateral knee and bilateral ankle conditions should not preclude him from obtaining and maintaining a gainful employment"); 224-25 (the VA reporting a rating of 5/5 bilaterally with regard to elbow flexion, elbow extension, wrist flexion, wrist extension, finger flexors, finger abduction, thumb opposition, hip flexion, hip extension, knee extension, ankle dorsiflexion, ankle plantar flexion, and great toe extension); 288-89 (the VA stating Plaintiff "service connected condition should not preclude him from obtaining and maintaining a light duty employment").

As to the 180 pages of documentation[7] incorporated into the record after Dr. Goodpasture and Dr. Long each reviewed the record, the ALJ only gave "some weight," Tr. at 17-18, to Drs. Goodpasture's and Long's respective opinions, and the ALJ stated he considered the entire record in making his findings. See Tr. at 14, 16. The Court is satisfied the ALJ adequately considered the 180 pages because he specifically referred to the exhibits comprising the 180 pages in the Decision. See Tr. at 15-17 (referring to Exhibits 6F, 7F, 8F, and 9F). The only two exhibits included in the 180 pages that the ALJ did not specifically refer to are Exhibits 5F and 10F, which are addressed infra Parts IV.B-C at 22-32.

In sum, the ALJ articulated seven reasons for discrediting Plaintiff's testimony. These reasons, taken together, are explicit and adequate reasons on which to base a finding that Plaintiff's testimony was "not credible." Further, upon a thorough review of the entire record, the undersigned finds that the ALJ's reasons are supported by substantial evidence.

### B.     Review by the Appeals Council

Plaintiff asserts the Appeals Council erred by failing to review the ALJ's Decision despite newly submitted evidence. Pl.'s Mem. at 20. Plaintiff concedes the Appeals Council properly considered the new evidence, but challenges the Appeals Council's conclusion that the ALJ's Decision was not contrary to the weight of the other evidence in light of the new evidence. See id. at 21. Specifically, Plaintiff claims the new evidence "contradicts the

---

[7]     The 180 pages of documentation to which Plaintiff refers include Exhibits 5F-10F. These exhibits contain a letter dated May 9, 2008 from the VA to Plaintiff; medical documentation from the VA regarding Plaintiff's medical history; and treatment notes from Dodd Chiropractic, Dr. Valentine, and Dr. Paganucci. See Tr. at 322-500. Some of the documentation contains duplicate records. See, e.g., Tr. at 383, 406. Also included is the VA's independent living assessment dated April 3, 2009 submitted to the Appeals Council after the ALJ issued the Decision. See Tr. at 501-05.

ALJ's finding regarding the severity of [Plaintiff]'s impairments, his functional limitations and the credibility of his testimony." Id. at 22.  Additionally, Plaintiff argues Dr. Goodpasture did not have the benefit of reviewing the new evidence before offering her opinion.[8]  Id. at 23.

Defendant contends that "Plaintiff's argument is without merit because the evidence Plaintiff submitted to the [Appeals Council] provides additional substantial evidence to support the ALJ's [D]ecision and would not change the outcome of the [D]ecision."  Def.'s Mem. at 18.  Defendant asserts the new evidence "implies Plaintiff could do more than he alleged he was able."  Id. at 18-19.

The new evidence consists of an independent living assessment of Plaintiff prepared by the VA on April 3, 2009 (Exhibit 10F; "Independent Living Assessment").  Id.; see Tr. at 501-05.  The Appeals Council received the Independent Living Assessment following the issuance of the ALJ's Decision and nevertheless denied Plaintiff's request for review of the Decision.  See Tr. at 1-5.

In the Independent Living Assessment, the VA rated Plaintiff's disability status as follows: "Seborrheic dermatitis with folliculitis 30% [service connected]"; "Degenerative joint disease thoracolumbar 20% [service connected]"; and "[D]egenerative joint disease of the ankles 20% [service connected]."  Tr. at 501.  The VA found Plaintiff has the following nonservice connected disabilities: "Left hand condition"; "Chondromalacia patella bilateral

---

[8]        Plaintiff does not mention Dr. Goodpasture by name in this argument, but he refers to Dr. Goodpasture's RFC assessment. See Tr. at 23.  As discussed supra Part IV.A.6 at 21-22, the ALJ stated in the Decision that Dr. Goodpasture's opinion did "deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions." Tr. at 17-18.  The ALJ also stated he considered the entire record of evidence. See Tr. at 14, 16.  Thus, it is clear Dr. Goodpasture's opinion was merely one piece of evidence that the ALJ considered in reaching his conclusions.

knee"; "Chronic fatigue"; "Idiopathic cardiomyopathy (heart [c]ondition)"; "Kidney condition";

"High cholesterol"; "Skin rash due to undiagnosed illness"; "diabetes."  Tr. at 501.

With regard to a functional assessment of Plaintiff, the VA determined Plaintiff needs

"[s]ome [h]elp" in the following areas: "Bathing/Showering"; "Toileting"; and "Ambulation."

Tr. at 501, 502.   The VA determined Plaintiff is "[i]ndependent" in the following areas:

"Dressing/Grooming"; "Transferring"; "Eating/Feeding"; "Cooking"; "Shopping"; "Managing

Medication"; "Laundry"; "Managing Finances"; and "Telephone."  Tr. at 502, 503.  Plaintiff

"drives a maximum of 15-20 miles[;] if more[,] done by others."  Tr. at 503.  The VA found

Plaintiff has a moderate loss of vision and hearing.  Tr. at 502.  The VA concluded Plaintiff

is "unable to keep up with [housekeeping.]"  Tr. at 502.  The VA indicated Plaintiff's yard

work is "[d]one by others" and "hasn't been done in a long time."  Tr. at 503.  As to Plaintiff's

social interaction skills, the VA made the following findings: Plaintiff is "[n]ot capable to

attend" social activities; is able to "[m]aintain phone contacts"; and is "[r]eceptive" to

interaction with the interviewers.  Tr. at 504.

The VA summarized its findings as follows:

[Plaintiff] does not sleep well because his mattress is very uncomfortable.  We
can look into ways to help him sleep.

. . .

[Plaintiff]'s home needs to be evaluated by the "Lamp" program from [the]
Gainesville [Department of Veterans Affairs Medical Center].  Areas of need
are: taller toilet; grab bars; shower chair; movable shower head and look at
replacing faucets in both bathrooms. . . . [Plaintiff] needs a one-time house
cleaning so he can keep up the home better on a regular basis.  We can
investigate ways we can alleviate his home situation.

. . .

[Plaintiff] loves the outdoors, but his limited mobility does not allow him to get out much. . . . [Plaintiff] can identify some organizations which he can link up with for an outdoor excursion.  If it is local, he can drive. . . . [Plaintiff] needs to get out of the home more.  He could look into volunteering his time in an area of interest. . . . [Plaintiff] needs another outlet to get him out of the home more.  We will work with . . . [Plaintiff] to identify other ways he can get out of the home.  This, along with going out on nature walks with others, will be hobbies.

[Plaintiff] has been determined entitled to [Veteran Rehabilitation and Employment] services.  He is infeasible for the achievement of a vocational goal at this time.  Independent living issues have been identified that could increase his quality of life and improve his function in his home and community.  An Independent Living Plan will be developed for consideration.

Tr. at 505.

"The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." Ingram v. Comm'r Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007) (quotation and citations omitted).  "[A] federal district court must consider evidence not submitted to the [ALJ] but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits." Id. at 1258.  "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." See id. at 1262.  The court must determine whether the ALJ's decision is "'contrary to the weight of the evidence'" in light of the new evidence submitted to the Appeals Council. Id. at 1266-67.

Taking into account the Independent Living Assessment, the ALJ's Decision is not contrary to the weight of the evidence of record.  The Court first addresses Plaintiff's argument regarding the severity of his impairments.  Plaintiff served in the United States Army from September 1986 through February 1993. Tr. at 193.  Medical records dated

February 6, 2008 from the VA indicate Plaintiff has the following service-connected disabilities: "1. Degenerative arthritis of the right and left knee 20%. 2. Eczema 30%. 3. Degenerative arthritis of the spine 10%." Tr. at 193-94. The ALJ specifically discussed Plaintiff's service connected disability ratings in the Decision. See Tr. at 14. The Eleventh Circuit addressed VA disability ratings in the context of social security disability determinations in Kemp v. Astrue, 308 F. App'x 423 (11th Cir. 2009) (unpublished). In Kemp, the Eleventh Circuit affirmed the Commissioner's decision denying disability insurance benefits to the plaintiff. Kemp, 308 F. App'x at 424, 428. In affirming the ALJ's decision, the Eleventh Circuit considered whether the ALJ erred by not specifically stating what weight was given to a disability rating of the VA. Id. at 426. The Eleventh Circuit determined the ALJ was permitted to determine implicitly the weight afforded to the VA disability rating. Id. Because the ALJ in Kemp "relied on the VA records and referenced the disability findings, in addition to the rest of the relevant evidence," the ALJ "implicitly found that the VA disability ratings were entitled to great weight," and the Eleventh Circuit affirmed the ALJ's decision that the plaintiff was not disabled. Id. (emphasis added).

Here, although the ALJ did not expressly provide specific weight to Plaintiff's service-connected disabilities ratings, he implicitly found Plaintiff's disability ratings were entitled to great weight because he referred to the disability ratings and included "degenerative arthritis of the spine, ankles, and knees" and "history of eczema" in the list of Plaintiff's severe impairments. Tr. at 14. In the Independent Living Assessment, the VA reported service-connected disability ratings nearly identical to the ratings previously determined, see Tr. at 193, with the exception that Plaintiff's spinal disability listed in the Independent Living

Assessment is 20%, Tr. at 501, rather than 10%, Tr. at 193.  Thus, the change to Plaintiff's disability ratings was insignificant.

Moreover, as to Plaintiff's argument regarding his functional limitations and credibility, medical records from the VA indicate Plaintiff's daily activities were affected as follows: "Chores: Severe"; "Shopping: Severe"; Recreation: Severe"; "Traveling: Severe"; "Feeding: Moderate"; Bathing: Moderate"; "Dressing: Moderate"; "Toileting: Moderate"; and "Grooming: Moderate."  Tr. at 288 (capitalization omitted).  The Independent Living Assessment, however, indicates Plaintiff is independent in several of these daily activities.  See Tr. at 502-03.  For example, Plaintiff is independent in shopping; Plaintiff is independent in dressing and grooming; and Plaintiff is independent in eating, feeding, and cooking.  See Tr. at 502.  Additionally, Plaintiff is able to drive fifteen to twenty miles independently.  Tr. at 503.  It appears Plaintiff is less limited than had been previously determined.  Regarding Plaintiff's need for "[s]ome help" in bathing/showering, toileting, and ambulation, the VA determined Plaintiff "needs grab bars in tub/shower area"; Plaintiff "needs a higher toilet"; and Plaintiff "has a cane."  Tr. at 501, 502.  As to Plaintiff's "moderate" hearing and vision loss, the VA indicated Plaintiff "needs an eye exam" and "[n]eeds a hearing referral."  Tr. at 502.  Although Plaintiff has problems sleeping, the VA determined his problems are related to his "uncomfortable" mattress.  Tr. at 505.

Addressing Plaintiff's housekeeping, the VA determined Plaintiff is "unable to keep up with" his housekeeping, but determined Plaintiff "needs a one-time house cleaning so he can keep up the home better on a regular basis."  Tr. at 505.  The VA stated that it "can investigate ways [the VA] can alleviate [Plaintiff's] home situation."  Tr. at 505.  It appears that with a one-time cleaning, Plaintiff can regularly maintain his home.  With regard to

Plaintiff's recreation, the VA rated Plaintiff as not being able to attend social activities, see Tr. at 504, but concluded that Plaintiff needs to get out of his home more and possibly volunteer his time in an area of his interest, see Tr. at 505.  The VA stated Plaintiff "is infeasible for the achievement of a vocational goal at this time."  Tr. at 505 (emphasis added).  The VA continued, however, that "[i]ndependent issues have been identified that could increase his quality of life and improve his function in his home and community."  Tr. at 505.  Thus, the VA indicated Plaintiff can possibly become independently functioning at home and in the community in the future.

The VA indicated Plaintiff's yard work is "[d]one by others," and observed Plaintiff's yard work had not "been done in a long time."  Tr. at 503.  Even if Plaintiff's inability to perform yard work is viewed as evidence of Plaintiff's limitations and impairments, it is insubstantial in relation to the other conclusions contained in the Independent Living Assessment.  Consequently, the VA's determination in the Independent Living Assessment that Plaintiff's yard work needs to be done by others does not warrant a finding that the ALJ's Decision is contrary to the other evidence of record.

In sum, the ALJ's Decision is not contrary to the other evidence of record in view of Plaintiff's disability ratings and functional assessment in the Independent Living Assessment because Plaintiff has disability ratings not significantly greater than previous findings, Plaintiff is independent in several daily activities, and Plaintiff can maintain himself at home with a few adjustments and a one-time cleaning of the home.  See Ingram, 496 F.3d at 1266-67.  Accordingly, the Appeals Council did not err by refusing to review the ALJ's Decision despite the submission of the Independent Living Assessment.

### C.     Weight Given to Letter From the VA

Plaintiff asserts "[t]he evidence of record . . . includes a letter from a VA Vocational Rehabilitation Counselor dated May 9, 2008[,] . . . which indicates that the VA determined . . . [Plaintiff] would not benefit from a program designed to return him to gainful employment." Pl.'s Mem. at 23.  Plaintiff states that "[t]his evidence is not included in the ALJ's summary of the evidence and . . . there is no discussion by the ALJ as to the weight provided to this evidence." Id. (emphasis omitted).  Plaintiff claims the May 9, 2008 letter "is evidence that supports his testimony as to the severity of his impairments and difficulties performing even minimal activities of daily living and simple household chores." Id. at 24.

Defendant contends in opposition that "the ALJ noted he carefully considered all of the evidence in the record[,]" and Plaintiff informed the ALJ at the hearing that the VA determined Plaintiff was "not eligible for vocational rehab." Def.'s Mem. at 15 (internal quotations omitted).  Thus, Defendant asserts, "the ALJ was aware of the contents of the letter both from the hearing and from the record." Id.

A review of the record reveals that on May 9, 2008, a vocational rehabilitation counselor from the VA sent Plaintiff a letter (Exhibit 5F; "May 9, 2008 Letter") setting forth the following:

> As your vocational rehabilitation counselor, I have made a determination that it is not feasible for you to benefit from a program designed to return you to gainful employment.  This decision is based upon your continued medical issues that keep you from fully participating in training and/or work activities. However, we will be providing you an evaluation for individualized Independent Living services.  I will be contacting you to schedule an in-home Independent Living Assessment to determine if there are needs you have in improving daily functioning and community access.

Tr. at 140 (emphasis omitted).

"[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is

not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole". Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (internal quotations omitted)).  "No principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."  Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989).

Here, the ALJ did not specifically refer to the May 9, 2008 Letter from the VA in the Decision. See Tr. at 12-18.  The ALJ, however, did state in the Decision that he reviewed all of the evidence of record. See Tr. at 14, 16.  Additionally, the Court is satisfied the ALJ was aware of the May 9, 2008 Letter because the letter was discussed at the hearing:

| | |
|---|---|
| ATTY: | . . . [The VA] recently determined that [Plaintiff] was not eligible for their vocational rehab because they did not feel that they could get him back to employment. |
| ALJ: | So that was exhibit number? |
| ATTY: | That was put in at 1E. |
| ALJ: | 1E? Okay. |
| . . . | |
| ALJ: | One other question . . . I think . . . [Plaintiff] said something about he's getting some assisted living or something like that. |
| ATTY: | [The VA is] getting ready to evaluate him for that program where they come out and perhaps provide assistance to do things around the house, chores and what not and also modify his living environment like with a special toilet seat and rails in his shower and things like that. |
| ALJ: | When is that taking place? |
| CLMT: | Well, I got an appointment to go see them on the fifth of February. |
| ALJ: | February 5?  Okay. |

CLMT:       Yes, sir.

. . .

ALJ:        Okay so why don't we say this, why don't we leave the record open for 30 days with the hopes of getting the Dodd Chiropractic and the VA's evaluation for the assisted living.  Could we get both of those within 30 days you think?

. . .

ATTY:       I'll write you if it's not going to be feasible within 30 days depending on when they see him.

Tr. at 71-72.

Furthermore, the severity of Plaintiff's limitations foreshadowed by the May 9, 2008 Letter is undermined by the Independent Living Assessment and the other evidence of record.   The letter referred to a forthcoming Independent Living Assessment, which eventually occurred on April 3, 2009.  As discussed above supra Part IV.B at 22-28, the ALJ's Decision is not contrary to the weight of the other evidence of record in view of the Independent Living Assessment.  In fact, the Independent Living Assessment illustrates Plaintiff has disability ratings not significantly greater than previous findings, Plaintiff is independent in several daily activities, and Plaintiff can maintain himself at home with a few adjustments and a one-time cleaning of the home.  See supra Part IV.B at 26-28.  Also, as stated earlier, the other evidence of record supports the ALJ's Decision with regard to Plaintiff's limitations.  See supra Part IV.A.6 at 19-22.  The undersigned is satisfied the ALJ considered the evidence of record as a whole.  See Dyer, 395 F.3d at 1211.  Substantial evidence supports the ALJ's Decision, and remanding the case to consider the May 9, 2008 Letter would not change the result.  Accordingly, there was no error on the part of the ALJ in not explicitly stating the weight given to the May 9, 2008 Letter in the Decision.

## V.  Conclusion

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's Decision is supported by substantial evidence of record.  The ALJ articulated explicit and adequate reasons, supported by substantial evidence, for finding Plaintiff "not credible."  Additionally, the Appeals Council did not err in refusing to review the ALJ's Decision despite the submission of the Independent Living Assessment.  Finally, there was no error on the part of the ALJ in not explicitly stating the weight given to the May 9, 2008 Letter.

In accordance with the foregoing, it is

**ORDERED:**

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2.    The Clerk of Court is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 31, 2011.

JAMES R. KLINDT
United States Magistrate Judge

wlg
Copies to:
Counsel of Record